## HEMAN CONSTRUCTION COMPANY, Respondent, v. HANNIBAL A. LOEVY, Appellant.

### St. Louis Court of Appeals, January 7, 1896.

1. **Municipal Ordinance of the City of St. Louis:** DELEGATION OF LEGISLATIVE POWER. An ordinance of the city of St. Louis for a local improvement, which provides that it shall not take effect unless, within twenty days from its approval, a stated sum is deposited with the city treasurer, does not by reason of that provision amount to a delegation of the legislative functions confided in the municipal assembly of that city.

2. ———: TIME OF TAKING EFFECT. Nor does such a provision contravene the requirement of the charter of said city, that "no ordinance passed by the assembly, except the general appropriation ordinance, shall take effect or be enforced until ten days after its approval, unless in case of emergency," etc.

3. **Special Taxes for Street Improvement in City of St. Louis:** REQUIREMENTS OF ORDINANCE FOR CONSTRUCTION OF SIDEWALKS. An ordinance of the city of St. Louis which provides for the improvement of a street, and as part thereof for the construction of sidewalks, must prescribe the width of the sidewalks and the material of which they are to be constructed, unless this is done by a general ordinance of the city. These matters can not be left to the discretion of the street commissioner.

4. ———: NAMING OWNER IN TAX BILL. A special tax bill for such improvement does not constitute *prima facie* evidence of the liability of one who is not named in it as owner of the land against which it is issued.

5. ———: EFFECT OF REQUIREMENT OF CITY CHARTER FOR PRESENCE OF STREET COMMISSIONER. The charter of the city of St. Louis provides that at meetings of the board of public improvements, of which the street commissioner is a member, "a majority of said board shall form a quorum for the transaction of business, but no final action shall be taken in any matter concerning the special departments of any absent commissioner, unless this business has been made the special order of the day." In the absence of the street commissioner an assistant and acting street commissioner had the right to attend the meeting of said board, but not to vote. *Held*, that the attendance of the latter in a matter concerning his department satisfied the above provision, unless such matter was one which required the unanimous vote of all the members of said board.

6. ———: REQUIREMENT FOR SIGNATURE OF ORDINANCE IN PRESENCE OF LEGISLATIVE BODY. An entry, that the speaker of a municipal legislative body signed an ordinance in open session, shows a compliance with a requirement for his signature in the presence of that body.

7. ———: DESCRIPTION OF PROPERTY. The property sought to be charged by a special tax bill is adequately described in such tax bill, when the description is sufficient to identify it. And, *held*, that the description in this case complied with this requirement.

8. ———: INCLUDING SEVERAL LOTS IN ONE TAX BILL. Two fractional lots, which are adjacent and used and appropriated by the owner as one property, must be treated as one property for the purposes of special taxes for local improvements, and should, accordingly, be included in one tax bill.

9. ———: CONSTRUCTION OF STREET IMPROVEMENTS: SUBDIVISION AND COMPLETION OF WORK. The work required by an ordinance for the construction of a street in the city of St. Louis may be subdivided, and sublet in parts to different persons. But, whenever the construction of a street is provided for by ordinance, the entire work must be completed before adjoining property can be taxed for any of its cost.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*H. A. Loevy* for appellant.

*T. J. Rowe* for respondent.

BIGGS, J.—The municipal assembly of the city of St. Louis authorized that portion of Morgan street between Sarah street and Newstead avenue to be graded, curbed, guttered and a Telford pavement laid on the roadway. The contract for that portion of the work was awarded to the plaintiff. The ordinance also provided for the construction of sidewalks, which was not covered by plaintiff's contract. The defendant is the owner of parts of lots 28 and 29 in block 4571. The portions of the lots are adjacent to and front thirty-two and one half feet on that portion of Morgan street above referred to. When the work was completed, the board of public improvements assessed against the

defendant's property its just proportion of the cost, and a special tax bill for the amount was delivered to the plaintiff. The present action is brought to enforce its payment. The defendant in his answer questioned the validity of the tax bill on several grounds, some of which we will notice. At the close of the evidence the defendant asked, and the court refused, an instruction in the nature of a demurrer to the evidence. There was a judgment for the plaintiff, and the defendant has appealed.

Section 6 of the ordinance provides that "the ordinance shall be void, unless within twenty days from its approval there shall be deposited with the city treasurer the sum of $127, to be credited to the fund set apart for street improvements." Section 21, article 111, of the charter provides that "no ordinance passed by the assembly, except the general appropriation ordinance, shall take effect or be in force until ten days after its approval, unless in case of emergency," etc. It is argued that section 6, *supra*, renders the entire ordinance invalid, for the reason that an ordinance can not be made to take effect upon contingencies, but must take effect either upon an emergency properly declared in the ordinance, or upon the expiration of ten days after its approval. It is clear that no ordinance can become a law until the expiration of ten days after its approval, unless it contains an emergency clause. This charter requirement was enacted to prevent ordinances from taking effect immediately upon their approval, which ought not to be, for the public or persons interested ought to be advised of them a reasonable time before they become operative. As to this, the charter is mandatory. But it does not follow that an ordinance may not be made to depend upon the happening of a future event within a reasonable time after the expiration of the ten days. Such a

case falls outside of the scope and purpose of the charter provision. That a law may be passed to take effect upon the happening of a contingency is established in this state. *State ex rel. v. Pond*, 93 Mo. 606, *loc. cit.* 621. Neither is the argument a sound one, that this provision of the ordinance was a delegation of legislative power, in that the ordinance was to become effective upon the consent of someone to pay $127. The ordinance was recommended and passed upon the petition of the property owners. The estimated cost of that portion of the improvement, which was chargeable to the adjacent property (section 18, article 6, charter), was $127 in excess of twenty-five per cent of the assessed value of the property to be charged. Section 18, *supra*. Unless otherwise provided, the city would have been bound for such excess, and, to protect it against this liability, the effect of the ordinance was made to depend upon the payment of that sum by the persons who had petitioned for the improvement. This was by no means a delegation of legislative power. While the operation of the law was made to depend upon the payment of the money by the petitioners, its passage was not referred to them; the law had already been passed, and it only called on the persons who desired the improvements to decide whether they would accept its provisions by complying with the condition. The consequences of the law resulted exclusively from the legislative will.

A reference to two cases, which discuss and apply the principle, will show the unsoundness of defendant's argument. In the case of *City v. Russell*, 116 Mo. 248, the municipal assembly of the city of St. Louis attempted by the passage of an ordinance to confer on the taxpayers in each block the right to determine whether a livery stable should be erected therein. The regulation

of such structures, which includes the right to determine their location, was vested by the charter in the city council. This was a legislative power which could not be delegated, and the supreme court so held. In the case of *Ruggles v. Collier*, 43 Mo. 353, the validity of an ordinance was questioned, in which the mayor was authorized to have certain streets repaved with wooden pavements whenever he should deem it necessary. This power was conferred by the charter on the city council. The ordinance was held to be invalid as an attempted delegation of a legislative power. We must, therefore, rule the first assignment against the defendant.

We can not declare the ordinance invalid, because it fails to prescribe the width of the sidewalks. This may have been provided for by a general ordinance applicable to that particular street. It is essential, however, that the width of sidewalks and the materials of which they are to be constructed or reconstructed should be determined either by general or special ordinance, as these things can not be left to the discretion of the street commissioner. Whether there is a general ordinance determining the dimensions of sidewalks to be constructed on Morgan street was not shown, and in that respect the plaintiff failed in his proof, and for that reason the instruction asked by the defendant ought to have been given. It may be remarked here that the tax bill did not name the defendant as *owner*, which under the charter (sec. 24, art. 6) was necessary to make the bill *prima facie* evidence of the defendant's liability. *Stadler v. Roth*, 59 Mo. 400; *Vieths v. Planet Property Co.*, ante, p. 207; *Farrell v. Rammelkamp*, ante, p. 425.

We are asked to declare the ordinance void, because the street commissioner was not present when final action was taken by the board of public improvements

in the matter. By the charter (sec. 14, art. 6) all ordinances for the improvement of streets must be recommended by the board of public improvements; and by section 35, of article 4, of the charter the street commissioner shall have under his special charge the construction of streets; and by the preceding section 33 it is provided that the board of public improvements (the street commissioner being a member of it) shall meet at least once each week, and that "a majority of said board shall form a quorum for the transaction of business, but no final action shall be taken in any matter concerning the special departments of any absent commissioner, unless this business has been made the special order of the day." No day, was fixed by the board of public improvements for final action on the ordinance in question, and the street commissioner was absent when it was finally recommended. The acting street commissioner, however, was present and recommended the improvement, and submitted an estimate of the cost. He had the right to attend meetings of the board, but had no vote. The business of the city is assigned to various departments, and a commissioner placed at the head of each who is supposed to have more than ordinary knowledge of the business of the department to which he is assigned. These commissioners, together with its president, form the board of public improvements. All ordinances providing for public improvements must emanate from that body. The object of the foregoing charter provision was to secure the attendance of a commissioner when an ordinance was under consideration which pertained to the business of his department, to the end that the board might have the benefit of his knowledge and information on the subject, and not, as the defendant argues, that his vote must be cast to make the action legal. When a commissioner can not attend, this

object is attained by the attendance of his assistant or the acting commissioner, who is also presumed to have special knowledge of the business in hand. This, we think, is the more reasonable construction. The one contended for does not meet the evident intention of the law, and besides, if adopted, would seriously embarrass the business of a department during the absence or sickness of its chief. In cases in which the unanimous vote of the board is required the authorities relied on by defendant would be applicable. Thus, if a majority of the lot owners along the line of a proposed street should protest against its improvement, then such improvement could only be recommended by the votes of all of the members of the board. Section 14, article 6.

The city charter provides that bills for ordinances shall be signed by the presiding officer of each house in open session and in the presence of the house (art. 3, sec. 22). It is claimed by the defendant that the ordinance for the improvement in question is void, because the speaker of the house of delegates did not sign it in the presence of the house. The entry in the journal is that, "the ordinance was read at length, and, no objections being made, the speaker in open session affixed his signature thereto in accordance with the provisions of the charter." The defendant's objection is that the entry does not show that the ordinance was signed in the *presence* of the house. We can not conceive how the ordinance could be signed in open session and not in the presence of the house.

Objection is made that the description of the land, as contained in the tax bill, is too vague and indefinite to fix a lien, and that, as there are two separate lots, there should have been a tax bill against each lot. The tax bill correctly describes the property as parts of lots 28 and 29, in city block 4571, having an aggregate front

of thirty-two and one half feet on Morgan street, by a depth of one hundred and ninety-five feet, and bounded north by an alley, east by Weston, south by Morgan street, and west by Hagey street. The description of the property is sufficient to identify it, which is all that the law requires. In the case of *City v. Whipple*, 71 Mo. 519, upon which the defendant relies, the property was described as "*part* of inlot numbered 331, on the plat of the city." How was it possible from that description to know what part of lot 331 was intended? This statement is sufficient to show that that case bears no analogy to this.

That two tax bills should have been issued is out of the question. The two fractional lots are adjacent and are used and appropriated as one property, and must be so treated. The defendant testified that he used the property as a residence; that his house was built partly on each lot, and that the whole premises were inclosed by a single fence.

Lastly, it is insisted that the tax bill is void, for the reason that the plaintiff's contract did not include the entire work, the construction of the sidewalk having been omitted. The right to subdivide the work is denied. There is nothing in the charter requiring the entire work to be let to one person, but on the contrary it shows that it may be subdivided. Section 15, article 6, provides that the board of public improvements may enter into annual contracts for the *construction of all sidewalks which may be ordered by ordinance*, or may become necessary to be done during the year. This point needs no further discussion. But the authorities are to the effect that the entire work provided for by the ordinance must be completed before adjoining property can be charged with any portion of its cost. The reason is that the property owners might be willing to bear the expense of a completed street, and unwilling

to pay for its partial improvement. In the one case the benefits conferred on their property might justify the outlay, whereas in the other the improvement might be a decided detriment. Cooley on Tax. p. 656, note 3; *City of Henderson v. Lambert,* 14 Bush. 24; *City of Stockton v. Whitmore,* 50 Cal. 554. In the case at bar the evidence shows, and it is uncontroverted, that at the time the tax bill was issued and at the time of the trial, which occurred four years thereafter, the sidewalk in front of defendant's premises had not been built. If this be true, the tax bill was prematurely issued, and there can be no recovery thereon.

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. It is so ordered.